UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYMPHONY FABRICS CORPORATION,

                 Plaintiff,

    v.

DAVID S. KNAPEL AND TEXTILE
IMPRESSIONS, INC.,

                 Defendants.

Case No. 07 Civ. 6606 (GEL)

**AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS**

STATE OF NEW YORK   )
                           ) ss:
COUNTY OF NEW YORK )

    DAVID B. NEWMAN, being duly sworn, deposes and says:

    1. I am a partner in Day Pitney, LLP, attorneys for plaintiff, Symphony Fabrics Corporation ("Symphony"), and submit this Affidavit in opposition to defendants' motion to compel arbitration. I am personally familiar with the facts set forth herein.

    2. Defendants' motion is nothing more than an attempt to delay reaching the merits. Simply stated, the arbitration provision is not applicable for three primary reasons: (a) defendant David Knapel ("Knapel"), who is the subject of this action, is not a signatory to the arbitration provision; (b) the conduct which is the subject of the claims herein has nothing to do with the Asset Sale and Purchase Agreement ("the Agreement"), directly or indirectly, but results from Knapel's conduct in operating the Pago Division of Symphony after the closing; and (c) the Asset Sale and Purchase Agreement specifically provides that Knapel is <u>not</u> a beneficiary thereof.

1573572A05102507

3. The point of departure on this motion is to review the Complaint. Paragraph 8 specifically states that - -

> [t]his action does not arise out of the Agreement, but rather from Knapel's employment by Symphony.

4. The Complaint goes on, for six (6) pages, to describe Knapel's conduct, as the President of the Pago Division, which constitutes the wrongful conduct

5. On the other hand, Knapel spends twenty three (23) pages trying to explain what the Complaint is not. From his description, it is hard to imagine that we are dealing with the same document.

6. Knapel, in paragraph 5 of his Affidavit, starts off by stating that this action - -

> revolves around a dispute or difference in arithmetic calculation regarding certain monetary adjustments…and certain dollar "debits" or "offsets" in arriving at the final Adjustments quantification.

7. However, the Complaint makes no mention of "debits" or "offsets", or monetary adjustments. Nor does the Agreement. In fact, Knapel, in his affidavit, does not cite to one provision of the Agreement which requires "debits" or "offsets" or monetary adjustments.

8. To the extent there were "debits" or "offsets" or monetary adjustments, these claims would be between Symphony, as purchaser, and defendant Texas Impressions, Inc., ("TI"), as seller. However, Symphony has no direct claims against TI in this case. A simple reading of the Complaint makes this clear. The only reason TI is named in the Complaint is based on the allegation that Knapel, in connection with his wrongful conduct after the Closing, deposited funds in the TI account.

9. In his twenty three page Affidavit, Knapel does not direct this Court to any direct claim that Symphony is asserting against TI.

1573572A05102507

10. Rather, he repeatedly contends that Symphony alleges that TI converted monies. This is not correct. It is Knapel who converted the funds and deposited them into the TI bank account.

11. Knapel uses his defined term "Adjustments" as the sine qua non of the Complaint. Although he repeatedly uses that term, it is not used in the Agreement. It is a figment of Knapel's imagination. Any adjustments to price would be between Symphony and TI; however, Symphony makes no such claim against TI in this action.

12. In paragraph 10 of his Affidavit, Knapel does describe Symphony's claims against him as arising from collecting payments on merchandise after Closing, neglecting to remit payments to Symphony on accounts receivable after Closing, and misdirecting customers as to their payments after Closing. Unfortunately, Knapel then falls back into the bad habit of calling these claims a simple "matter of Adjustments." Adjustments to what? There is nothing in the Agreement that talks about Adjustments which his why Knapel does not even once refer to any specific provision of the Agreement which so provides.

13. This action is all about Knapel. It is not about TI. Knapel does not have an arbitration clause upon which he can rely because he is not a signatory to one. This is undisputed. Further, the actions which are alleged in the Complaint occurred after the Closing of the Agreement.

14. Knapel seems to think that providing the history of the transaction between Symphony and TI somehow changes the nature of the claims against him personally for fraud and defalcation. To be sure, it does not. Even if the claims herein were against TI, as opposed to Knapel personally, the history is extraneous, irrelevant, and of no consequence as the Agreement contains an integration clause, paragraph 9.4, which provides that all the agreements

3

and understandings between the parties are incorporated into the Agreement. Once again, Knapel's nine (9) page tortured description of the "prior business relationship and framework of the Agreement," is nothing more than a diversion. Although the story might make a nice novel, it has nothing to do with the claims being personally asserted against Knapel with regard to his stealing money from Symphony.

15. Next, Knapel feels the need to explain why he believes he has claims against Symphony. The only response Symphony has is "bring them on." Knapel can assert any claims he contends he has counterclaims in this action. If Knapel has claims against Symphony, he could *not* assert them in any arbitration as he is not a party to the arbitration agreement. Therefore, it is hard to understand how Knapel could contend that he would assert his personal claims against Symphony in an arbitration proceeding (para. 55 of Knapel's Affidavit), if his signature on the Agreement states, in hac verba, that it applies only to paragraph 4.2 and *not* paragraph 9.5, the arbitration clause.

16. Knapel takes what was a novella and expands it into a multi-act play by describing his expectations and how Symphony failed to meet those expectations. Finally, Knapel acknowledges that it is all about him. In talking about the finances of the Pago Division of Symphony, which he ran after the Closing and from which this action arises, Knapel writes in the first person. "I contemplated and expected …," "I either personally undertook…," "I had wanted to…," "I asked…," and "I was ready and willing…"

17. Knapel probably does not even understand that he has made Symphony's point. It is *his* actions after Closing in the operation of the Pago Division that give rise to this lawsuit. So, by his persistent use of the term "I" he concedes that he was running the Pago Division and

1573572A05102507

therefore any alleged embezzlement had to result from his actions which have nothing to do with the Agreement.

18. Finally, we can look at the documents which Knapel appends to his Affidavit. First, is the Complaint. The Preliminary Statement, states in paragraph 1, that this is - -

> an action for conversion, unjust enrichment, breach of fiduciary duty, misrepresentation and fraud arising from Knapel's knowing an purposeful theft of funds by submitting fake sales receipts and falsifying books and records.

So far, no mention of adjustments, the Agreement, or TI.

19. As previously noted, paragraph 8 of the Complaint specifically states that - -

> [t]his action does not arise out of the Agreement, but rather from Knapel's employment by Symphony.

20. The Complaint alleges in paragraph 12 that Knapel collected payments on merchandise and repeatedly, intentionally and wrongfully neglected to remit payments to Symphony and instead deposited the funds into TI's bank account. Again, no mention of adjustments, of the Agreement, and no substantive allegations against TI.

21. Continuing, the Complaint in paragraph 13 alleges that Knapel falsified invoices, books and records thereby manipulating the receivables of the Pago Division and deposited customer funds into the TI bank account. Again, no mention of adjustments, or the Agreement, and no substantive allegations against TI.

22. Finally, paragraph 14 alleges that Knapel neglected to remit payments to Symphony from cash and credit card receivables with the overage going into the TI account. Again, no mention of adjustments, the Agreement, and no substantive allegations against TI.

1573572A05102507

23. Next, Knapel appends the Agreement as an exhibit. Knapel is a signatory only to the extent of paragraph 4.2 which deals with representations and warranties. Even Knapel does not contend that Symphony's claims have anything to do with paragraph 4.2.

24. To the extent there are adjustments to the purchase price, which will be discussed below, they would not inure to Knapel's benefit as he is not the Seller. The provision dealing with the purchase price – paragraph 2.3 – does not mention Knapel. Rather, it refers to "Seller", which is a defined term, and does not include Knapel.

25. What makes more clear that Knapel has no rights under the Agreement is paragraph 5.3, which is entitled "Personnel." Although the Agreement states that Symphony will hire Knapel, it specifically provides as follows:

> None of Seller's personnel, shall be or be deemed to be a third-party beneficiary of this Agreement, or have any rights by, through or under Seller or this Agreement.

26. Therefore, by the very terms of the Agreement, pursuant to which Knapel claims to have rights, Knapel is specifically deemed *not* to be a beneficiary. Not being a signatory to the arbitration provision and being specifically excluded as a beneficiary of the Agreement, Knapel cannot reasonably claim any right to compel arbitration.

27. As an aside, the Agreement does not use the terms "adjustments", "credits", or "debits", or provide for the adjustments which Knapel suggests.

1573572A05102507

28. In light of the foregoing, it is clear that Knapel has absolutely no right to have the claims against him personally to be arbitrated. Therefore, it is respectfully requested that the instant motion to compel arbitration be denied in all respects.

_____
DAVID B. NEWMAN

Sworn to before me this
25 day of October, 2007

_____
Notary Public

ANGELA MONTEIRO
Notary Public, State of New York
No. 01MO6124066
Qualified in Bronx County
Commission Expires March 21, 2009

7

1573572A05102507