```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
SYMPHONY FABRICS CORPORATION,             :
                                          :
              Plaintiff,                  :
                                          :
       -against-                          :   Case No. 07-Civ.-6606 (GEL)
                                          :
DAVID S. KNAPEL and TEXTILE               :
IMPRESSIONS, INC.,                        :
                                          :
              Defendants.                 :
------------------------------------------------------ X
```

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO COMPEL ARBITRATION AND
TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE,
TO STAY ITS PROSECUTION PENDING ARBITRATION**

Edward H. Rosenthal (ER-8022)
Elizabeth H. Miller (EM-9404)
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Ave.
New York, New York 10022
Tel.: 212-980-0120
Fax: 212-593-9175
erosenthal@fkks.com
emiller@fkks.com

Stephen W. Gruhin (SW-0526)
GRUHIN & GRUHIN, P.A.
60 Route 46 East
Fairfield, New Jersey 07004
Tel.: 973-227-9300
Fax: 973-227-3900
sgruhin@gruhinlaw.com

*Attorneys for David S. Knapel and
Textile Impressions, Inc.*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

POINT I - THIS DISPUTE MUST BE ARBITRATED BECAUSE IT IS WITHIN THE SCOPE OF THE BROAD ARBITRATION PROVISION CONTAINED IN THE RELEVANT AGREEMENT ........................................................................... 2

    A.    The Factual Allegations Underlying Plaintiffs' Claims Touch Matters Covered by the Agreement ...................................................................................... 2

    B.    The Governing Clause Is So Broad That This Dispute Is Presumptively Arbitrable ................................................................................................................. 4

POINT II - THE COURT MUST COMPEL ARBITRATION WHETHER OR NOT KNAPEL IS A SIGNATORY TO THE ARBITRATION PROVISION ...................... 7

    A.    Both TII and Knapel Have Standing To Enforce The Arbitration Provision ......... 7

    B.    Knapel Can Seek Enforcement Of The Arbitration Provision To Which Plaintiff Is Bound Because The Issues Are Intertwined With The Agreement ................................................................................................................. 9

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

Page

*Choctaw Generation LP v. American Home Assurance Co.*,
    271 F.3d 403, (2d Cir. 2001) ..................................................................................9

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16, (2d Cir. 1995)...............................................................................3, 5, 6

*Computer Assocs. Int'l, Inc. v. Com-Tech Assocs.*
    239 A.D.2d 379. 658 N.Y.S.2d 322 (2d Dep't 1997).........................................7

*Ferrari North America, Inc. v. Ogner Motor Cars, Inc.*,
    No. 02 Civ. 7720 (SAS) 2003 WL 102839 (S.D.N.Y. Jan. 9, 2003).......................5

*Genesco, Inc. v. T. Kakiuchi & Co. Ltd.*,
    815 F.2d 840 (2d Cir. 1987)..............................................................................2, 3

*Louis Dreyfus Negogce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001)....................................................................................5

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998)......................................................................................5

*Sammarco v. Pepsi-Cola Bottling Co.*,
    1 A.D. 3d 341, 767 N.Y.S. 2d 59 (2d Dep't. 2003)................................................6

*Smith/Enron Cogeneration LP v. Smith Cogeneration Int'l*,
    198 F.3d 88 (2d Cir. 1999).......................................................................................8

*Stuart Leventhal, Fzus, Inc. v. Franzus Co., Inc.*,
    No. 88 Civ. 3547, 1988 WL 132868 (S.D.N.Y. Dec. 6, 1988)..........................6, 10

*Tanbro Fabrics Corp. v. Deering Milliken, Inc.*,
    35 A.D.2d 469, 318 N.Y.S.2d 764 (1st Dep't 1971)...............................................9

*TNS Holdings Inc. v. MKI Securities Corp.*,
    92 N.Y.2d 335, 680 N.Y.S.2d 891, 894 (1998)......................................................9

## **PRELIMINARY STATEMENT**

Despite the fact that two of its claims are against defendant Textile Impressions Inc. ("TII") and unquestionably covered by the arbitration provision in the Asset Sale and Purchase Agreement (the "Agreement"), plaintiff Symphony Fabrics Corporation ("Symphony" or "Plaintiff") attempts to characterize this dispute as an action only against David Knapel ("Knapel") and arising out of his personal activities which are not subject to arbitration. Plaintiff argues further that, even if it were covered, this dispute cannot be arbitrated because Knapel as an individual did not sign on to the arbitration provision.

Plaintiff's arguments obscure several important facts that the Court must consider. First, as Defendants describe at length in their Memorandum of Law in support of the Motion to Compel ("Def. Mem.") and in Knapel's supporting affidavit ("Knapel Aff."), this dispute is unequivocally covered by the broad arbitration clause in Section 9.5 of the Agreement. Contrary to Plaintiff's portrayal of the facts, the amounts in issue constitute revenues realized from certain accounts receivable, and the Parties' respective rights thereto as set forth in several provisions in the Agreement. While the method for reconciling and distributing these monies was not specified, the dispute arises out of the Parties' competing claims and respective rights thereto as contained in the Agreement; and, therefore, is arbitrable under the Agreement's broad arbitration provision. Second, because this dispute is inextricably linked to an agreement containing an arbitration provision to which Plaintiff is bound, Plaintiff is estopped from avoiding arbitration whether Knapel signed on to the provision or not. The law is clear that a willing non-signatory to an arbitration provision can compel an unwilling signatory to arbitrate where, as here, the claims are "intertwined" with the agreement. Plaintiff cannot avoid its obligation to arbitrate this dispute.

# ARGUMENT

## POINT I

### THIS DISPUTE MUST BE ARBITRATED BECAUSE IT IS WITHIN THE SCOPE OF THE BROAD ARBITRATION PROVISION CONTAINED IN THE RELEVANT AGREEMENT

A. **The Factual Allegations Underlying Plaintiffs' Claims Touch Matters Covered by the Agreement**

In determining whether Plaintiff's claims fall within the scope of the arbitration provision in Section 9.5 of the Agreement, the Court must consider the factual allegations underlying the claims, not the legal causes of action or conclusions asserted by Plaintiff. In *Genesco, Inc. v. T. Kakiuchi & Co. Ltd.*, 815 F.2d 840 (2d Cir. 1987), for example, the Second Circuit held that an arbitration provision will cover fraud and civil RICO claims if the underlying facts "touch matters" contained in the relevant agreement. There, plaintiff-clothing manufacturer alleged that two fabric distributors bribed a former employee to ensure that plaintiff purchased all of its fabric exclusively from the defendants and their affiliates. The scheme allegedly caused the plaintiff to purchase overpriced, damaged, unsuitable, and noncompetitive goods over a long period of time. Although the plaintiff maintained "that conspiracy and bribery are at the heart of its complaint," *id.* 815 F.2d at 846, the court granted defendants' motion to compel arbitration under the broad arbitration provisions contained in several sales agreements because the conspiracy affected the pricing and quality of goods sold pursuant to those agreements. Similarly, here, Symphony's conclusory statement that "this action does not arise out of the agreement, but rather from Knapel's employment by Symphony" (Compl. ¶ 8), and its assertions that Knapel's "fraud and defalcation" (Newman Aff., ¶14) are central to the case, are not dispositive.

Plaintiff alleges that Knapel, while running TII's Pago division following its sale by TII to Symphony, deposited funds into TII's account. Compl. ¶¶11-15. Without elaborating,

Plaintiff asserts in a conclusory fashion that Knapel's actions constitute, among other things, conversion. But Plaintiff's portrayal omits important facts, set forth by the Defendants in their moving papers, that the Court must consider. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (citing *Genesco* 815 F.2d at 846) (finding that, to determine whether a claim is arbitrable, the court should look to the allegations of the party *demanding* arbitration and, if they fall within the scope of the parties' agreement, "[the] court should compel arbitration, no matter how frivolous [the] allegations appear to be").

As Defendants explained, TII sold certain defined assets, including the trade name "Pago Fabrics", to Symphony pursuant to the Agreement. Def. Mem. at 2; Knapel Decl., ¶¶24-25. As part of that transaction, Knapel, who ran Pago as the functional equivalent of a division of TII, agreed to continue to run Pago as a division of Symphony after the sale. Def. Mem. at 2. Because Symphony and TII operated their respective businesses before, at, and after the March 1, 2006 Effective Date of the Agreement, the Parties anticipated that their respective rights to the accounts receivable needed to be clarified. Knapel Decl. ¶¶ 34-40. Thus, the Parties included in the Agreement three provisions to express the rights and obligations of Symphony and TII with respect to the accounts receivable of TII (*i.e.* Pago) and Symphony. *Id.*

Section 1.6(xi) of the Agreement deemed all accounts receivable generated from TII's business prior to the Effective Date "Excluded Assets" that were to be exclusively retained by TII after the transaction closed. Section 4.1(b)(xv) of the Agreement requires TII and Knapel to engage in certain business activities "subsequent to the as of Effective Date," and provides further that certain costs incurred after the Effective Date are to be born by the Defendants, "while all profits with respect to all accounts receivable generated as and after the Effective Date shall inure to the benefit of and shall belong exclusively to [Symphony] subject to" certain of Symphony's ongoing obligations. Exhibit E to the Agreement entitled "Assumed Liabilities"

provides "that Seller remains solely responsible for the satisfaction (from both the Purchase Consideration and its collection, on a post-closing basis, of all accounts receivable generated by Seller prior to the as of Effective Date)" of the certain defined liabilities. Although none of these provisions specify when or how revenues realized from these accounts receivable would be distributed, it is clear that the Parties anticipated that such distribution would occur after the closing date. Section 4.1(b)(xv) states that the terms and conditions are "expressly intended to survive the Parties' execution and mutual exchange of this Agreement" and Exhibit E references the "post-closing" collection of accounts receivable generated prior to the Effective Date.

Notably, Plaintiff does not deny the applicability of Sections 1.6(xi) and 4.1(b)(xv) or Exhibit E to this dispute. Rather, it tries to distance itself from the Agreement by characterizing this dispute as arising out of the actions of a wayward employee after the transaction at issue closed and harping on the fact that the words "reconciliation" and "adjustment" do not appear in the Agreement. This is nothing more than an effort to distract the court from what *is* in the Agreement. Defendants concede that the Parties did not specify in the Agreement how mechanically the income from the accounts receivable would be distributed, the necessary process Defendants refer to as "reconciliation" and "adjustment." But the Parties' silence on the method of distribution (as opposed to ownership) cannot change the fact that Sections 1.6(xi) and 4.1(b)(xv) and Exhibit E establish the rights and obligations of TII and Symphony with respect to those funds and that their post-closing distribution of those amounts was anticipated by the Parties. The facts alleged by Defendants clearly touch upon the Agreement and, therefore, this dispute is subject to Arbitration.

**B.   The Governing Clause Is So Broad That This Dispute Is Presumptively Arbitrable**

In determining whether a particular dispute falls within the scope of an agreement's arbitration clause, the court should first "classify the particular clause as either broad or narrow."

*Louis Dreyfus Negogce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).[1]  If the arbitration clause is broad, "there arises a presumption of arbitrability" and "arbitration of even collateral matters will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotations omitted) (construing clause mandating arbitration of "any dispute arising from the making, performance or termination of [the agreement]" as "a broad arbitration clause").

Section 9.5 of the Agreement calls for the arbitration of "[a]ny dispute or controversy arising out of or relating to this Agreement, any document or instrument delivered pursuant to, in connection with or simultaneously with this Agreement, or any breach of this Agreement or any such document or instrument." This language is common in "the prototypical broad arbitration provision" and is "precisely the kind of arbitration clause that justifies a presumption of arbitrability." *Ferrari North America, Inc. v. Ogner Motor Cars, Inc.*, No. 02 Civ. 7720 (SAS) 2003 WL 102839 (S.D.N.Y. Jan. 9, 2003) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998)). Where a clause is this broad, and in light of the FAA's general rule of resolving any "doubts concerning the scope of arbitrable issues in favor of arbitration," *Louis Dreyfus*, 252 F.3d at 223, even matters collateral to the Agreement must be submitted to arbitration.

As described above, the Agreement recognized that TII was entitled to receive and retain all revenues to be realized from its outstanding accounts receivable prior to the Effective Date (Section 1.6(xi)), while Symphony was solely entitled to revenue from all new accounts receivable to be generated as and after the Effective Date (Section 4.1(b)(xv)). Although the

---

[1] If the court finds that the clause is narrow, "[it] must determine whether the dispute is over an issue that is on its face within the purview of the clause or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (internal quotations omitted). Where the clause is narrow "a collateral matter will generally be ruled beyond its purview." *Louis Dreyfus*, 252 F.3d at 224 (citing *Collins & Aikman*, 58 F.3d at 23).

details of a post-closing reconciliation and distribution are not specified in the Agreement, they are certainly contemplated by Exhibit E and implicit in all of the provisions establishing the Parties' respective rights thereto. This is sufficient to bring this dispute squarely within the purview of Section 9.5 o the Agreement. But even if it is construed as only collateral thereto, this dispute still falls within the scope of the arbitration clause.

Where the dispute is clearly collateral, the court should test the presumption of arbitrability by looking at the underlying allegations and asking "whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Collins* 58 F. 3d at 23. Without question, this dispute necessarily involves issues of contract construction and the rights and obligations of the parties under the Agreement. Sections 1.6(xi) and 4.1(b)(xv) and Exhibit E, independently as well as collectively, obligated TII and Knapel to impliment certain actions following the Effective Date in establishing Symphony's and TII's respective entitlements to revenues generated by certain accounts receivable before and after the Effective Date. The allegations underlying this dispute survive the test of presumptiveness and, given the breadth of the arbitration provision, this dispute certainly falls within its scope.

The cases cited by Plaintiff are inapposite. *Stuart Leventhal, Fzus, Inc. v. Franzus Co., Inc.*, No. 88 Civ. 3547, 1988 WL 132868 (S.D.N.Y. Dec. 6, 1988), involves an optional arbitration provision ("the parties *may* submit their disagreements to arbitration") that allowed for disputes to be resolved by a court or an arbitrator. By contrast, the provision at issue here unequivocally requires arbitration ("any dispute or controversy . . . *shall* be settled by arbitration") and, as such, it is the type of provision for which a court will compel arbitration. *Id.* at *8. The other two cases cited by Plaintiff involve narrowly tailored arbitration clauses that did not trigger a presumption of arbitrability. *See Sammarco v. Pepsi-Cola Bottling Co.*, 1 A.D. 3d 341, 767 N.Y.S. 2d 59 (2d Dep't. 2003)(clause limiting arbitration to disputes "concerning the

interpretation of [sic] application of the provisions of this Agreement" did not cover personal injury claims); *Computer Assocs. Int'l, Inc. v. Com-Tech Assocs.* 239 A.D.2d 379. 658 N.Y.S.2d 322 (2d Dep't 1997)(finding that "the scope of the arbitration clause at issue is narrow and equivocal" where it specified that arbitration would be used to resolve only disputes over whether "Collections or Royalties had been understated or underpaid").

### POINT II

### THE COURT MUST COMPEL ARBITRATION WHETHER OR NOT KNAPEL IS A SIGNATORY TO THE ARBITRATION PROVISION

A.     **Both TII and Knapel Have Standing To Enforce The Arbitration Provision**

Plaintiff argues that the Court cannot compel arbitration of this dispute because Knapel is not a signatory to the arbitration provision and there are "no substantive allegations against TII". Newman Aff., ¶¶ 20-22. This is simply not true. First, TII unquestionably has standing to enforce the arbitration provision. Plaintiff brought this action against TII and asserted claims against it for conversion and unjust enrichment.[2] These claims arise out of a dispute over the ownership of revenues allocated between TII and Symphony by the Agreement and the dispute is unquestionably covered by the arbitration provision. Thus, TII is entitled to assert its right to arbitrate these claims irrespective of whether or not Knapel can, and the Court must compel arbitration with respect to those claims.

Second, Knapel as a direct party and signatory to the Agreement has standing to enforce the arbitration provision against the Plaintiff. The preamble to the Agreement expressly includes

---

[2] *See also,* Complaint ¶19 ("[a]s a result of the conduct of Knapel and TI [*i.e.*, TII] ... Symphony suffered damages ..."). [Emphasis Added]; ¶20 ("[t]he action of Knapel and TI were purposeful and contumacious..." [Emphasis Added]; ¶23 ("Despite Symphony's requests, Knapel and TI have failed to provide support showing they were entitled to these payments, and Knapel and TI have not repaid Symphony...") [Emphasis Added]; and ¶24 ("[a]s a result of the conduct of Knapel and TI ... ) [Emphasis Added].

Knapel in the definition of the term "Parties" and the arbitration provision states that any arbitration conducted pursuant to it would be "binding on the *Parties,*" without limitation or qualification. *See* Agreement, Section 9.5 (emphasis added). Because Knapel is a defined party, he can enforce the arbitration provision.

Symphony argues that the qualifications under the Knapel signature block evidence his non-party status, interpreting the second Knapel signature line to reflect that Knapel: (*i*) "... is a signatory only to the extent of ... [Section] 4.2 which deals with representations and warranties." (Newman Aff., ¶23); and (*ii*) "...has no standing to compel arbitration." Pl. Mem. at 4. This is contrary to the Agreement's other provisions which the Parties clearly enabled Knapel to enforce.³ For example, Section 5.5 provides that Plaintiff "hereby agrees to indemnify, hold and save Seller *and Knapel* harmless" (emphasis added) from claims pertaining to certain liabilities and which obligation survives the Agreement's execution. This is consistent with Knapel's status as a defined party. If Plaintiff's argument were correct, Knapel would not be permitted to enforce this section, although he is expressly entitled to do so.

Symphony further argues that Knapel lacks standing under Section 5.3 which states that "[n]one of Seller's personnel shall be or be deemed to be a third-party beneficiary of this Agreement, or have any rights by, through or under Seller or this Agreement." Clearly, this provision neither strips Knapel of his "Party" status nor his entitlement to indemnification from Symphony under Section 5.5. Fairly read, Section 5.3 simply precludes the assertion by a former

---

³ The signature bock states that Knapel signed the Agreement "individually and as sole shareholder of Textile Impressions Inc. (Solely As To Section 4.2)" [Emphasis Added]. Symphony completely misconstrues the foregoing. The word "individually" simply reaffirms the preamble set forth on its first page, namely, that Knapel *qua* individual is one of the three (3) "Parties" to the Agreement. The words "and as sole shareholder of Textile Impressions Inc." reaffirm the second *WHEREAS* clause also appearing on the Agreement's first page which provides that "Knapel is the sole shareholder of Seller [*i.e.,* TII]." Finally, through the parenthetical phrase "(Solely As To Section 4.2)" Knapel in his individual capacity, reaffirms TII's representations and warranties set forth in Section 4.1.

TII employee that he or she has an absolute entitlement to employment by Symphony on a post-closing basis as opposed to being offered employment.

**B.    Knapel Can Seek Enforcement Of The Arbitration Provision To Which Plaintiff Is Bound Because The Issues Are Intertwined With The Agreement**

The law is clear that a party willing to arbitrate that is not a signatory to an arbitration provision can still seek enforcement of that provision against a party unwilling to arbitrate if (i) the unwilling party is a signatory to the arbitration provision and (ii) the claims at issue are "intertwined" with the agreement containing that provision. *Choctaw Generation LP v. American Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (holding plaintiff estopped from avoiding arbitration with defendant-surety that was not a signatory to arbitration provision because plaintiff signed on to arbitration provision in related construction contract and the issues to be resolved were "intertwined" with that contract). *See also Smith/Enron Cogeneration LP v. Smith Cogeneration Int'l* 198 F.3d 88, 98 (2d Cir. 1999).  As set forth above, the issue to be resolved here -- the ownership of accounts receivable revenue as allocated by Sections 1.6(xi) and 4.1(b)(xv) and Exhibit E of the Agreement -- is inextricably linked to the Agreement.  Thus Knapel can compel Plaintiff to arbitrate this dispute whether or not he is considered a signatory to the arbitration provision.

The cases Plaintiff cites to support its contrary position are inapplicable.  Here, the party seeking arbitration – Knapel – is willing to arbitrate.  The party who does not want to arbitrate – Symphony – is unquestionably a signatory to the arbitration provision.  By contrast, two of the three cases cited by plaintiffs involve *signatories* to arbitration provisions seeking to compel unwilling *non-signatories* to arbitrate.  *See TNS Holdings Inc. v. MKI Securities Corp.*, 92 N.Y.2d 335, 680 N.Y.S.2d 891, 894 (1998)(denying plaintiff's motion to compel two co-defendants to arbitrate under an agreement they did not sign but that was signed by an affiliate); *Tanbro Fabrics Corp. v. Deering Milliken, Inc.*, 35 A.D.2d 469, 318 N.Y.S.2d 764 (1st Dep't

1971) (court declined to enforce arbitration provision against unwilling non-signatory defendant where agreement had been signed by company before defendant purchased it and defendant did not become an assignee). Furthermore, *Stuart Leventhal*, is not controlling as Plaintiff suggests because the arbitration provision at issue was permissive and the unwilling signatory could not be compelled to arbitrate in any event. *Stuart Leventhal*, 1988 WL 132868 at *8.

Plaintiff should not be permitted to avoid arbitrating claims that clearly fall within the scope of the arbitration provision to which all Parties clearly agreed.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in Defendants' initial Motion and supporting submissions, Defendants respectfully request that the Court grant their Motion to Compel Arbitration and to Dismiss the Complaint or, in the Alternative, Stay Prosecution Pending Arbitration in its entirety.

Dated: New York, New York
       December 6, 2007

                      FRANKFURT KURNIT KLEIN & SELZ, P.C.

                      By: _____
                            Edward H. Rosenthal (ER-8022)
                            Elizabeth H. Miller (EM-9404)

                      488 Madison Avenue
                      New York, New York 10022
                      Tel.: 212-980-0120
                      Fax: 212-593-9175

                      Stephen W. Gruhin (SW-0526)
                      GRUHIN & GRUHIN, P.A.
                      60 Route 46 East
                      Fairfield, New Jersey 07004
                      Tel.: 973-227-9300
                      Fax: 973-227-3900

                      *Attorneys for David S. Knapel and*
                      *Textile Impressions, Inc.*